[No. 1178.    Decided May 2, 1894.]

## A. E. McEACHERN, *Appellant*, v. WILLIAM BRACKETT *et al.*, *Respondents.*

JUDGMENT WITHOUT SERVICE — SETTING ASIDE — UNAUTHORIZED APPEARANCE OF ATTORNEY — APPEAL — ERRORS NOT RAISED BELOW.

Where a mortgagor has not been served with summons in a suit to foreclose his mortgage, an action on his part to set aside the decree of sale rendered in the foreclosure suit cannot be defeated on the ground of laches from the fact that he had neglected for five years to pay the mortgage debt and during the same period had not paid taxes on the land nor exercised any acts of ownership over it, though residing in a neighboring county and possessing the ability to pay.

Where a judgment has been rendered against a party not served with process, but in whose behalf an unauthorized attorney had appeared and pleaded, the judgment will be set aside as a nullity, although innocent third parties may suffer, when the application for relief is made promptly upon the discovery of the existence of the judgment, and when the proof that the attorney did not have authority to appear is clear and convincing.

When no exception is taken in the trial court to the affidavit of sureties upon an appeal bond, the defect is thereby waived, and cannot be raised in the supreme court.

*Appeal from Superior Court, King County.*

*Pratt & White*, for appellant.

*Blaine & De Vries*, and *Smith & Littell*, for respondents.

The opinion of the court was delivered by

STILES, J.— Appellant, in 1883, bought from respondent Brackett a parcel of land in King county, at the price of $650, of which sum $300 was paid by note secured by mortgage, and the balance in cash. The note and mortgage were transferred twice, so that respondent Brautigam was the holder thereof in August, 1884, and respondents

Phinney and Leary were endorser for value and accommodation endorser, respectively.   At the date last mentioned, which was after the maturity of the note, Brautigam commenced a foreclosure action, making appellant and the other respondents above named defendants.   All of the defendants in that action, except the appellant here, were served with the summons personally.   The sheriff returned that appellant could not be found in his (King) county, and no further attempt to make service upon him was made.   September 8, 1884, certain qualified attorneys filed a general demurrer for "the defendants," which bears upon its face the words, "Overruled, GREENE, J.," without date.   On the 15th of September, Brackett filed an answer by a different attorney, and on December 20th following the default of the other three defendants was entered for want of an answer.   After a reference a decree of foreclosure was entered, and in due course the property was sold by the sheriff to Brautigam for $300, which left a deficiency of $173.89, which Phinney and Leary paid. After receiving his deed Brautigam conveyed the property to respondent Nicholai.

Appellant, in November, 1890, brought this action to set aside the decree of foreclosure and avoid the subsequent conveyances, on the ground that he never had any knowledge of the foreclosure proceedings, or of any of the steps taken in consequence thereof, and that the filing of the demurrer by attorneys assuming to represent the defendants was without his knowledge or authority.   The complaint made tender of a sum of money in payment of the mortgage debt, which sum was deposited with the clerk, and the sufficiency of the amount whereof is not attacked.   The court below found all the facts to be substantially as alleged in the complaint, and particularly that the filing of the demurrer was without any authority from appellant.   These findings the respondents criticize; but

we think they are fully sustained both by the direct testimony and the surrounding circumstances, and shall not disturb them. The ninth finding was against appellant, and as it was probably the basis of the court's action, we quote it in full as far as it applies, viz.:

"9. That from the time when said note and mortgage became due, to wit, the 6th day of May, 1884, until about a month before the commencement of this present suit, to wit, May 15, 1889, the plaintiff herein, said A. E. McEachern, paid no attention whatsoever to said property, nor did he make any inquiries as to what, if anything, had been done with said note and mortgage, and that he never paid any taxes on the said property, nor in any manner exercised any acts of ownership therein; and that the taxes on the same have been paid during all said time by the defendant, John C. Brautigam. That during the fall of 1884, and the time prior to the commencement of this action, the plaintiff herein had the ability to pay and discharge said note and mortgage, and that he could have arranged for the payment of said note and mortgage at any time from said date to the commencement of this action. . . . That during most of the time from the date of the purchase of said property until the commencement of this action, the plaintiff was in the vicinity of Edison, Skagit county, Washington, and was in the city of Seattle at least six times in the year 1884, the year when said note and mortgage matured."

Upon these facts the court adjudged appellant chargeable with such laches as ought to deprive him of the relief sought, and held his case to be without equity.

It will be observed that the two matters found to constitute laches were the non-payment of taxes and the non-payment of the note, though the appellant possessed the ability to pay and resided in a neighboring county. But neither of these matters seems to us sufficient to justify a refusal to set aside a judgment entered without jurisdiction, where the party against whom the judgment was entered had no notice either of the judgment or that any one was claiming

his land.   The mortgage provided for the addition of any
taxes paid by the mortgagee to the sum recoverable upon
foreclosure; and as to the note, the law charges nothing
except interest as a penalty for the non-payment of such
overdue obligations.    The land does not appear from the
record to have been in the actual occupancy of anyone,
and therefore required no attention.    No amount of atten-
tion would have disclosed the fact that a foreclosure had
taken place; and there is no rule of law which requires a
mortgagor in arrears to keep watch of the court records to
see whether a judgment has been entered up against him
without his knowledge.

Passing this point, we come next to the main question
discussed by counsel, viz., the effect of a judgment rend-
ered against a party not served with process but in whose
behalf an unauthorized attorney appears or pleads.    Appel-
lant claims that such a judgment is voidable when directly
attacked, as in this case; while respondents maintain that
it is invulnerable, the party's remedy being an action for
damages against the attorney unless he is shown to be in-
solvent; or that it must stand as against an innocent third
party; or that there can be no relief unless a good defense
is shown in connection with the application for relief.

A judgment of this kind is void in fact, although the ap-
pearance of an attorney is presumed to be authorized, so
that the face of the record shows no defect other than the
want of actual service; and it will be set aside as a nullity
although innocent third parties may suffer, when the ap-
plication for relief is made promptly upon discovery of
the existence of the judgment, and upon clear and convinc-
ing proof that the attorney did not have authority to ap-
pear. *Harshey v. Blackmarr*, 20 Iowa, 161; *Newcomb v.
Dewey*, 27 Iowa, 381; *Great West Mining Co. v. Mining Co.*,
12 Col. 46 (20 Pac. 771); *Shelton v. Tiffin*, 6 How. 163;
*Williams v. Neth*, (Dak.) 31 N. W. 630, and note; *Arno*

*v. Wayne Circuit Judge*, 42 Mich. 362 (4 N. W. 147); *Mutual Life Ins. Co. v. Pinner*, 43 N. J. Eq. 52 (10 Atl. 184); *Glass v. Smith*, 66 Tex. 548 (2 S. W. 195); *Anderson v. Hawhe*, 115 Ill. 33 (3 N. E. 566); *First National Bank v. Wm. B. Grimes, etc., Co.*, 45 Kan. 510 (26 Pac. 56); *Stocking v. Hanson*, 35 Minn. 207 (28 N. W. 507); *Garrison v. McGowan*, 48 Cal. 592; *Bayley v. Buckland*, 16 L. J. Exch. 204; Mechem, Agency, § 810.

The principal authority to the effect that the remedy is against the attorney only, when he is solvent, is found in New York, where, since *Denton v. Noyes*, 6 Johns. 297, that has been the rule.    But the decision of the court of appeals of that state in the recent case of *Vilas v. Plattsburgh, etc., R. R. Co.*, 123 N. Y. 440 (25 N. E. 941), while it followed what was conceded to be the settled law of the state, showed a disposition on the part of the court to restrict the rule to the most meager limits, and gave it only the coldest approval.

The rule as to showing a meritorious defense has no application in a case of this kind, where the applicant for relief does not seek to be discharged from the burden of his obligation, but merely asks that his property, which was taken from him without any process of law of which he had notice, be returned to him upon his satisfaction of the just lien created by the mortgage.    Were it not that the statute of limitations would now bar a suit for foreclosure, equity would not demand a tender in order to procure the avoidance of the judgment; the court would simply clear its record of that which had been entered there without jurisdiction, although formally regular.

It frequently happens that courts have to decide between two innocent parties to the disadvantage of one or the other, and it may be so here.    Brautigam, the plaintiff in the foreclosure suit, and the purchaser at the sale, was not an innocent purchaser.    He knew he had not served ap-

pellant, and in taking his judgment upon the voluntary and unquestioned appearance of attorneys he took the risk that that appearance might be unauthorized. As was said in *Bayley v. Buckland, supra:*

"The plaintiff in such a case is not wholly free from the imputation of negligence; the law requires him to give notice to the defendant by serving the writ, and he has not done so. The defendant, therefore, is wholly free from blame, and the plaintiff is not."

If he was misled by the attorney he has his remedy. Again, one cannot claim to have been an innocent purchaser in any case where he was the judgment creditor under whose execution the property was sold. The judgment roll disclosed the want of service and the voluntary appearance, and was information to all purchasers of the title from Brautigam of the infirmity that might exist therein, even if notice of the infirmity were necessary.

Respondents Leary and Kinnear having been voluntarily dismissed in the superior court, should not have been included in the notice of appeal. Having been so included, upon the appellant's confession they are entitled to costs of their motion for dismissal here.

We find no internal evidence that the statement of facts does not contain all that the act of 1891 required in equity cases. From the brief and argument we gather that there was a contest before the court as to whether the statement should contain the actual testimony, or the reporter's shorthand notes of the trial, including colloquies between counsel, etc. Fortunately the best counsel prevailed, and we have a record of the case, and nothing else. The judge took the proposed statement and the proposed amendments under advisement, and after consideration determined to certify, and did certify, the former as the statement. Some confusion of dates occurred in this connection; but there

42—8 WASH.

was nothing which rendered the proceeding subject to a motion to strike or dismiss.

A motion is made to dismiss because the surety on the appeal bond did not include in his affidavit the statement that his property was in this state.    This matter should have been addressed to the superior court upon an exception to the sufficiency of the surety, and not have been permitted to lie dormant until it was too late for appellant to have the affidavit corrected or furnish a new bond. Section 10 of the appeal act of 1893 (Laws 1893, p. 124) is very blunt in its statement that an appeal bond "shall be of no force" unless the affidavit shows certain things; but as the affidavit is not conclusive of anything stated in it, so we think it was not meant that a bond wanting in some of the particulars mentioned should be absolutely void.    Probably if the judgment had been affirmed respondents would have been ready enough to maintain it as a binding obligation.    The construction is, we think, that such a bond is merely open to objection to be taken in the manner provided in § 11; and no such objection having been made, the defect was waived.

The judgment will be reversed, and the cause remanded for a new judgment in accordance with the prayer of the complaint.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT and SCOTT, JJ., dissent